IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GILBERTO SANCHEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-249-MHT-CWB |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This action is before the court on Petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  (Doc. 2).[1]  For the reasons discussed below, the Magistrate Judge recommends that the § 2255 motion be denied without an evidentiary hearing and that this case be dismissed with prejudice.

I.      **Background**

On November 28, 2017, Petitioner pled guilty to an information charging him with conspiracy to distribute controlled substances for no legitimate medical purpose and outside the usual course of professional medical practice in violation of 21 U.S.C. § 846, health care fraud in violation of 18 U.S.C. § 1347, and three counts of money laundering in violation of 18 U.S.C. § 1957(a).  (Doc. 12-7).  All charges arose from Petitioner's operation of a lucrative "pill mill" through which he gave numerous patients prescriptions for controlled substances—including fentanyl, hydrocodone, and oxycodone— knowing that the patients did not need, and were likely to abuse, the drugs.  Petitioner billed insurance companies for the medically unnecessary

---

[1] References to documents filed in this action are designated as "Doc."  Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as presented for filing.

appointments and treatments and then used the proceeds to purchase expensive personal items. (Doc. 12-8 at pp. 6-12; Doc. 12-2 at pp. 1-3).

On August 23, 2018, after rejecting a plea agreement that limited Petitioner's sentencing exposure to 120 months in prison, the district court sentenced Petitioner to a term of imprisonment of 145 months.  (Doc. 12-5 at p. 81).  Petitioner in turn appealed on grounds that: (1) the district court erred by imposing a vulnerable-individual enhancement under U.S.S.G. § 2D1.1(b)(15)(B)(iv); (2) his 145-month sentence was substantively unreasonable; and (3) the district court erred by imposing a $50,000 fine.[2]  On March 26, 2020, the Eleventh Circuit issued an opinion upholding Petitioner's convictions and sentence.  *See United States v. Sanchez*, 807 F. App'x 950 (11th Cir. 2020) (per curiam).

On March 20, 2021, Petitioner filed a 28 U.S.C. § 2255 motion[3] to assert the following claims:

1.      the district court erred by relying on "subjective findings" in sentencing him for the money laundering and controlled substance counts;

2.      his counsel rendered ineffective assistance by failing to negotiate "a plea of value" or protect his rights at sentencing;

3.      his counsel rendered ineffective assistance by failing to challenge the evidence that the district court relied on to enhance his sentence;

4.      his counsel rendered ineffective assistance by allowing him to plead guilty to charges he was not guilty of;

---

[2] *See* 11th Circuit Appeal No. 18-14918-CC (Doc. 36).

[3] Petitioner filed a § 2255 motion on March 20, 2021 (Doc. 1), and an amended § 2255 motion two days later on March 22, 2021 (Doc. 2).  The amended motion duplicated the substance of the original motion. The court informed the parties that the amended motion would supersede the original motion and that Petitioner's case would proceed on the amended motion.  (*See* Doc. 3 at p. 1).  For purposes of clarity (because Petitioner filed a second amendment to his motion on January 17, 2023), the court will refer to the amended motion filed on March 22, 2021 (Doc. 2) as Petitioner's § 2255 motion.

     5.       his counsel rendered ineffective assistance by failing to investigate defenses and facts that supported his innocence; and

     6.       the district court created clear sentence disparities between him and other similarly situated defendants.

(Doc. 2 at pp. 2-3, 10-19).

On January 17, 2023, Petitioner move to amend his § 2255 motion to add claims that he is entitled to relief from his conspiracy conviction under *Ruan v. United States*, 142 S. Ct. 2370 (2022), and that his counsel rendered ineffective assistance by failing to provide advice and make arguments based on the legal principles identified in *Ruan*. (Docs. 27 and 27-1).

## II.  Legal Standard

A prisoner may obtain relief under § 2255 when the trial court imposes a sentence that (1) violates the Constitution or laws of the United States, (2) exceeds its jurisdiction, (3) exceeds the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  If a court determines that a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  The burden of establishing that vacatur of a conviction or sentence is appropriate falls upon the petitioning prisoner.  *See Beeman v. United States*, 871 F.3d 1215, 1221-22 (11th Cir. 2017).

3

### III.   Discussion

### A.      Claims of Ineffective Assistance of Counsel

Petitioner presents several claims for ineffective assistance of counsel.[4]  To prevail on an

ineffective-assistance of counsel claim, a petitioner must show both that his counsel's performance

was deficient and that the deficient performance prejudiced him.  *See Strickland v. Washington*,

466 U.S. 668, 687 (1984).  Performance is deficient when it falls below "an objective standard

of reasonableness and [is] outside the wide range of professionally competent assistance."

*Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted).

Generally speaking, to establish prejudice a petitioner must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  Unless a petitioner satisfies the showings required under

both the performance and prejudice prongs of *Strickland*, relief on an ineffective-assistance claim

should be denied.  *Id.* at 687.  Once a court decides that one of the requisite showings under

*Strickland* has not been made, it need not decide whether the other showing has been.  *Id*. at 697;

*see Clark v. Comm'r, Alabama Dep't of Corr*., 988 F.3d 1326, 1331 (11th Cir. 2021).

The *Strickland* standard for evaluating claims for ineffective assistance of counsel also

applies to guilty pleas.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A petitioner alleging

ineffective assistance in the plea context must establish that counsel's performance was deficient

(*i.e*., professionally unreasonable) and that the deficient performance "affected the outcome of the

plea process." *Hill*, 474 U.S. at 59.  To establish prejudice, a petitioner "must show that there is a

reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and

would have insisted on going to trial." *Id*.  A mere allegation by a defendant that he would have

---

[4] (Doc. 2 at pp. 2-3, 12-18).

insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

### 1.    Failure to Negotiate "Plea of Value" or Protect Rights at Sentencing

Petitioner claims that his counsel rendered ineffective assistance by "fail[ing] to negotiate a plea of value" or protect his rights at sentencing. (Doc. 2 at pp. 2, 12-13).  According to Petitioner, because the court ultimately rejected the plea agreement and imposed an upward variance at sentencing, he "received nothing of value for his cooperation," which he says resulted from his counsel's deficient performance. (*Id*. at p. 12).

Under the plea agreement the government agreed to recommend a sentence of no more than 120 months in prison—and Petitioner had the right to withdraw his guilty plea if the court rejected the 120-month cap. (Doc. 12-3 at pp. 2-4).  After considering the parties' arguments and objections regarding the presentence report ("PSR"), the court rejected the plea agreement and informed Petitioner that the court was inclined to vary upward from his guidelines range as calculated in the PSR.  (*Id.* at pp. 48-49, 72-73).  The court recessed the sentencing hearing to allow Petitioner to consult with his counsel in light of the likelihood of an upward variance.  (*Id.* at p. 73).

After a 30-minute recess, the court called Petitioner to the lectern and informed him (1) that the court had rejected the plea agreement, (2) that the court did not have to follow the terms of the rejected plea agreement, (3) that he had the right to withdraw his guilty plea, and (4) that if he did not withdraw his guilty plea the court could "dispose of the case less favorably toward the defendant than the plea agreement contemplated." (Doc. 12-5 at p. 74).  The court asked Petitioner

if he understood, and Petitioner nodded in the affirmative. (*Id.* at p. 74). The court then asked

Petitioner if he wanted time to consult further with his counsel, to which Petitioner again shook

his head in the negative. (*Id.*). Counsel for Petitioner further informed the court that Petitioner

wanted to proceed with sentencing as opposed to going to trial. (*Id.*).

The court calculated Petitioner's total offense level at 30 after applying adjustments for

enhancements, special offense characteristics, acceptance of responsibility, and substantial

assistance. (Doc. 12-5 at pp. 80-81). That offense level, when combined with Petitioner's

calculated criminal history category of I, yielded a guidelines range of 97 months to 121 months

in prison. (*Id.* at p. 81). As it had indicated it was inclined to do, the court varied upward and

imposed a sentence of 145 months in prison. (*Id.*). The court stated that it applied the upward

variance because of "the estimated hundreds of patients harmed by [Petitioner's] criminal

activities," the "toll of medically unnecessary treatments and opioid medications, including

exacerbating previous addictions and creating new ones," "the duration of the criminal activity,"

the "stigmatization and harm to [Petitioner's] colleagues and coworkers," and the estimated

financial loss to insurers of between $3.5 and $7.5 million dollars "or more." (*Id.* at pp. 81-82).

In arguing that his counsel were ineffective for failing to negotiate a plea of value,

Petitioner appears to suggest that counsel performed deficiently by not obtaining a binding

plea deal with terms more favorable to him. But Petitioner presents nothing to show that a more

favorable deal was obtainable in his case, and there is no evidence that the government would have

acquiesced to an agreement with more favorable terms. Further, considering the court's rejection

of the plea agreement and the court's imposition of an upward variance, Petitioner can demonstrate

no reasonable likelihood that the court would have accepted a plea agreement with terms more

favorable to him. A petitioner "fails to establish that he was prejudiced by counsel's failure to

negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible." *Cummings v. United States*, No. CV 112-224, 2013 WL 2422889 at \*8 (S.D. Ga. June 3, 2013); *see also Freeman v. United States*, 1:06–CR–0185–TWT– JFK, 2011 WL 2680494 at \*5 (N.D. Ga. June 10, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement—such a showing could be made by almost anyone who has entered into a guilty plea."), *adopted sub nom* by *United States v. Warner-Freeman*, 2011 WL 2680509 (N.D. Ga. July 7, 2011).

Petitioner says he would have insisted on going to trial but for his counsel's allegedly deficient performance. (Doc. 2 at p. 12). But at the sentencing hearing, after being informed specifically that the court was rejecting the plea agreement and was inclined to impose a sentence greater than the one contemplated under the rejected agreement, Petitioner indicated in open court that he wanted to stand by his guilty plea and go forward with sentencing. (Doc. 12-5 at p. 74). If Petitioner was dissatisfied with the state of affairs after his plea agreement was rejected, he had an opportunity to withdraw his guilty plea and proceed to trial, yet he opted to stand by his plea— even after it was clear that his sentence could be, and was likely to be, longer than originally contemplated. There is no indication in the record that Petitioner felt pressured into doing so or did not understand the potential consequences if convicted without the plea agreement in place.

In maintaining that his counsel failed to protect his rights at sentencing, Petitioner alleges that his counsel and the prosecutor convinced him that the government would move for "a significant Rule 35 reduction,"[5] which he was assured the court intended to grant, "only to have that evaporate after the direct appeal was filed." (Doc. 2 at 12). Nothing in the record supports

---

[5] Rule 35(b) of the Federal Rules of Criminal Procedure provides in pertinent part: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1).

Petitioner's suggestion that he pled guilty—and then stood by his guilty plea—upon the belief that

the government was obligated to file a Rule 35 motion on his behalf. Petitioner points to no

statement by his counsel or the government—either before or after sentencing—in which he was

promised that a Rule 35 motion was a certainty in his case. In affidavits addressing Petitioner's

claim, his counsel aver that the government agreed after sentencing to <u>consider</u> filing a Rule 35

motion if Petitioner continued to cooperate and tell the truth and not appeal on the basis that he

had done nothing illegal. (Doc. 9 at p. 2; Doc. 10 at pp. 7-9; Doc. 11 at p. 2). Petitioner's counsel

advised him that the government had sole discretion whether to file a Rule 35 motion and that the

court would have discretion whether to accept or deny any such request. (Doc. 10 at pp. 7-8).

According to his counsel, Petitioner's post-sentencing cooperation deteriorated when during

proffer sessions he asked about appealing his convictions and sentence on grounds including that

he was not guilty. (*Id.* at p. 8). The government indicated to Petitioner's counsel, who then so

advised Petitioner, that the government was unlikely to file a Rule 35 motion because his status

as a cooperator would become nonexistent if he maintained his innocence. (*Id.*). Thus, the

"evaporation" of Petitioner's chances at a Rule 35 motion resulted from his own post-sentencing

actions and not from any alleged errors by counsel.

There also is nothing in the record to support a suggestion that the court would have granted

a Rule 35 motion had the government filed one. At sentencing, Petitioner received a four-level

downward departure under U.S.S.G. § 5K1.1 for substantial assistance to the government.

(Doc. 12-5 at p. 29). The government had asked for a five-level departure, but the court determined

that four was more appropriate. (*Id.* at pp. 28-41 65, 70-71). The court's various statements at

sentencing that it considered Petitioner's crimes to be serious, including the court's stated rationale

for imposing an upward variance, indicate there was little likelihood the court would have reduced

Case 2:21-cv-00249-MHT-CWB   Document 34   Filed 10/12/23   Page 9 of 18

Petitioner's sentence if presented with a Rule 35 motion.

On this record, Petitioner has failed to demonstrate either deficient performance by counsel or that he was prejudiced.  Petitioner thus is entitled to no relief.

### 2.      Failure to Challenge Evidence Supporting Enhancements

Petitioner further claims his counsel was ineffective for failing to challenge the evidence the district court relied on in enhancing his sentence.  (Doc. 2 at pp. 2-3, 13-14).  He maintains that "the government provided no witnesses or statements to support the enhancements that the Court applied to the Petitioner, and ultimately the government certainly provided nothing to support the refusal of the plea or sentence."  (*Id*. at p. 13).  Such allegations notwithstanding, nothing in the record supports Petitioner's conclusory assertion that his counsel allowed the court to receive and consider unreliable evidence at sentencing, or that the court's rejection of the plea agreement and imposition of an upward variance was unsupported and resulted from deficient performance by counsel.  Throughout the sentencing hearing, Petitioner's counsel advocated strenuously for a lesser sentence while challenging findings in the PSR and making arguments against various enhancements and imposition of an upward variance.  Petitioner identifies no inaccuracies in the PSR, and he points to no specific evidence presented at sentencing that the court improperly relied upon.  Nor does he point to any evidence that his counsel should have presented that might have resulted in imposition of a lesser sentence.  Because he cannot show deficient performance by counsel or any resulting prejudice, Petitioner is entitled to no relief.

### 3.      Allowing Guilty Plea When Petitioner Was Not Guilty

Petitioner next claims that his counsel rendered ineffective assistance by allowing him to plead guilty to charges he was not guilty of.  (Doc. 2 at pp. 15-16).  He contends that his counsel failed to explain the nature of the charges against him, so that he ended up pleading guilty to crimes

9

he actually did not commit.  (*Id*. at pp. 15-16).  According to Petitioner, his conduct amounted to nothing more than "a normal part of the everyday acts of a physician."  (*Id.* at p. 15).

At the change of plea hearing, after the prosecutor set out detailed factual bases for the charges, Petitioner admitted his guilt to each count in the information and agreed that the government could prove the facts supporting those charges beyond a reasonable doubt. (Doc. 12-7 at pp. 9-15).  Petitioner also acknowledged that he had received a copy of the information and had fully discussed the charges against him with his counsel, that he understood the plea agreement, that he was fully satisfied with his counsel's representation and advice, and that he was pleading guilty of his own free will because he indeed was guilty.  (*Id.* at pp. 3-4).

Petitioner's sworn statements at the change of plea hearing reflect that he understood the charges against him and that he was admitting his guilt on those charges.  There is a strong presumption that the statements of a defendant during the guilty plea colloquy are true.  *Blackledge v. Allison*, 432 U.S. 63, 73-74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).  Because Petitioner has failed to rebut his own sworn statements at the change of plea hearing, he cannot prove that his counsel allowed him to plead guilty to charges he was not guilty of.  He thus is entitled to no relief on this claim of ineffective assistance of counsel.

**4.     Failure to Investigate**

Petitioner additionally claims that his counsel rendered ineffective assistance by "fail[ing] to investigate defenses and facts that supported [his] innocence."  (Doc. 2 at pp. 17-18).  He cursorily asserts that his counsel spent only a "limited number of hours ... in the analysis of the government's data and medical files" and that his counsel "ignored exculpatory evidence."  (*Id*. at pp. 17-18).

To show prejudice based on counsel's allegedly inadequate investigation, a defendant must show what information would have been obtained through further investigation and also show that it likely would have produced a different outcome in the proceedings. *See Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005); *United States v. Price,* 357 F. Supp. 2d 63, 67-68 (D.D.C. 2004). Petitioner provides no identifiable, specific facts showing that his counsel failed to prepare a defense or conduct an adequate investigation in his case. He does not suggest what information might have been obtained through further investigation by counsel, and he specifies no exculpatory evidence that his counsel ignored. Nor does he suggest an avenue of defense reasonably likely to succeed had his counsel better analyzed the facts of his case. Put most simply, Petitioner's conclusory allegations cannot support a claim of ineffective assistance of counsel.

**B.      Petitioner's Remaining Claims**

**1.      District Court's Reliance on "Subjective Findings"**

Petitioner claims that the court erred by relying on subjective findings in sentencing him for the money laundering and controlled substance counts. (Doc. 2 at pp. 10-11). Some of Petitioner's specific allegations restate arguments made on direct appeal, where he claimed that his sentence was substantively unreasonable. The Eleventh Circuit considered the claim and rejected Petitioner's arguments. *See Sanchez*, 807 F. App'x 952-53. If a claim has been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). Thus, to the extent Petitioner's § 2255 claim that the district court erroneously relied on subjective findings in sentencing him was raised and decided against him in his direct appeal, his claim is procedurally barred from collateral review. *See Nyhuis*, 211 F.3d at 1343.

11

To the extent that Petitioner's arguments regarding the court's alleged reliance on subjective findings are raised for the first time in his § 2255 motion, his claim is procedurally defaulted. Under the procedural default rule, a defendant generally must advance an available claim on direct appeal or else be barred from presenting the claim in a § 2255 motion. *See Lynn*, 365 F.3d at 1234. There are two exceptions to this rule. Under the first exception, a petitioner must demonstrate "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Id.* Under the second exception, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citations omitted). Petitioner does not demonstrate cause excusing his procedural default, nor does he make a colorable claim of actual innocence. Therefore, his procedurally defaulted claim is not subject to collateral review.

### 2.      Sentencing Disparities

Petitioner claims that the court created clear sentencing disparities between him and other similarly situated defendants. (Doc. 2 at pp. 16-17). This same argument was part of Petitioner's claim on direct appeal. As noted, the Eleventh Circuit considered the claim and rejected Petitioner's arguments. *See Sanchez*, 807 F. App'x 952-53. Because the claim was raised and decided against Petitioner in his direct appeal, it is procedurally barred from collateral review. *See Nyhuis*, 211 F.3d at 1343.

### 3.      Claims Under *Ruan*

In an amendment filed on January 17, 2023, Petitioner claims he is entitled to relief from his conspiracy conviction under *Ruan v. United States*, 142 S. Ct. 2370 (2022), and that his counsel rendered ineffective assistance by failing to provide advice and make arguments based on the legal principles identified in *Ruan*. (Docs. 27 and 27-1).

In *Ruan*, which was decided on June 27, 2022, the United States Supreme Court considered the appropriate jury instructions regarding criminal intent in a case involving a doctor charged with unlawfully distributing controlled substances by writing medically unnecessary prescriptions in violation of 21 U.S.C. § 841(a).   *See* 142 S. Ct. at 2375.   The statute at issue in *Ruan*, 21 U.S.C. § 841(a), forbids a person from knowingly and intentionally distributing a controlled substance "[e]xcept as authorized."   *See* 21 U.S.C. § 841(a)(1).   As provided by regulation, a prescription is only "authorized" when a doctor issues it "for a legitimate medical purpose ... acting in the usual course of his professional practice."   *Ruan*, 142 S. Ct. at 2375 (citing 21 C.F.R. § 1306.04(a) (2021)).   The Supreme Court held that § 841(a)'s "knowingly or intentionally" *mens rea* requirement applies to the statute's "as authorized" requirement.   *Id*. at 2375.   That is, to convict a doctor of unlawfully prescribing controlled substances under § 841(a), the government must prove beyond a reasonable doubt that the doctor knew the prescription was unauthorized. *See id.*

While it is not entirely clear how Petitioner believes *Ruan* entitles him to relief from his conspiracy conviction, the government argues that any claims based on *Ruan* would be time-barred under the statute of limitations set forth in 28 U.S.C. § 2255(f).   (Doc. 29).   As described in § 2255(f), the one-year limitation period for § 2255 motions runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

13

28 U.S.C. § 2255(f).

In most cases, the one-year limitation period starts to run on the date a defendant's judgment of conviction becomes final. Because Petitioner did not seek certiorari review by the United States Supreme Court, his conviction became final 90 days after the Eleventh Circuit issued its March 26, 2020 opinion affirming his convictions and sentence. *See Close v. United States*, 336 F.3d 1283, 1284-85 (11th Cir. 2003); *Kaufman v. United States*, 282 F.3d 1336, 1337-39 (11th Cir. 2002); Sup. Ct. R. 13(1), (3). Thus, Petitioner's conviction became final on June 24, 2020 and, pursuant to § 2255(f)(1), Petitioner had until June 24, 2021 to file a timely § 2255 motion. Petitioner timely filed his § 2255 motion on March 20, 2021. However, Petitioner did not file an amendment to raise his *Ruan*-based claims until January 17, 2023—over 21 months after expiration of § 2255(f)(1)'s limitation period.

Even so, Petitioner contends that his *Ruan*-based claims should be deemed timely because they "relate back" to claims asserted in his initial § 2255 motion. (Doc. 27 at pp. 2-3; Doc. 27-1 at pp. 5-6). Rule 15(c) of the Federal Rules of Civil Procedure provides for the relation back of amendments filed after the running of a period of limitation in certain circumstances. "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). Rule 15(c)(1) states that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001). An untimely amendment to a § 2255 motion

does not relate back to the date of the original motion where it "seek[s] to add a new claim or to insert a new theory into the case." *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001). For an untimely § 2255 claim to relate back under Rule 15(c), "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344.

Petitioner's new, *Ruan*-based claims implicate his state of mind regarding Count 1 of the information for conspiracy to distribute controlled substances—specifically, whether he knew the prescriptions he wrote were unauthorized and, more particularly, whether he knew the prescriptions were for no legitimate medical purpose and were outside the usual course of professional medical practice.  However, his new claims insert a new theory for relief not present in the claims brought in his timely § 2255 motion.  Because his new claims do not have the required legal relationship to his earlier claims, his new claims do not "relate back" under Rule 15(c) and are time-barred under § 2255(f)(1).  *See Farris v. United States*, 333 F.3d 1211, 1215-16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

Petitioner maintains that whether or not relation back applies to his new claims, it is § 2255(f)(3) and not § 2255(f)(1) that provides the limitation period for his *Ruan*-based claims. He argues that his new claims are timely under § 2255(f)(3) because he raised them within one year after the date on which the Supreme Court decided *Ruan*.  (Doc. 27 at pp. 2-3; Doc. 27-1 at p. 7).  Section 2255(f)(3) allows a petitioner one year within which to assert a claim based on a right when "that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  But the Supreme Court did not state that its *Ruan* holding would apply retroactively to cases on collateral review, and, to date, the Eleventh Circuit has not held that *Ruan* applies retroactively.

15

Thus, the limitation period for bringing a § 2255 claim under *Ruan* cannot be controlled by § 2255(f)(3).  Under § 2255(f)(1), the *Ruan*-based claims are untimely.

Even if Petitioner's *Ruan*-based claims were considered timely—whether because they relate back to claims in his timely § 2255 motion or because *Ruan* retroactively applies to § 2255 motions—those *Ruan*-based claims would not entitle Petitioner to relief.  The holding in *Ruan* applied to substantive drug-distribution charges under 21 U.S.C. § 841(a) and not to conspiracy charges under 21 U.S.C. § 846.  *See United States v. Ruan*, 56 F.4th 1291, 1299-1302 (11th Cir. 2023) ("*Ruan* II") (Eleventh Circuit opinion on remand from the Supreme Court's *Ruan* decision); *United States v. Murphy*, No. 520CR291LSCSGC1, 2023 WL 2090279 at *3 (N.D. Ala. Feb. 17, 2023).  To obtain a conspiracy conviction under § 846, the government must prove: "(1) there was an agreement between two or more people to commit a crime (in this case, unlawfully dispensing controlled substances in violation of § 841(a)(1)); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *United States v. Azmat*, 805 F.3d 1018, 1035 (11th Cir. 2015).  A conspiracy conviction under § 846 requires the government to prove that the defendant knew of the illegal nature of the scheme and agreed to participate in it.  *Id*.  When pleading guilty to the conspiracy charge in Count 1, Petitioner admitted that he knowingly formed and joined the criminal conspiracy.  Thus, he admitted to understanding the illegitimate nature of his conduct.  This was sufficient to show that he knew he was acting in an unauthorized manner, thus satisfying the *mens rea* requirement.  *See Ruan II*, 56 F.4th at 1299-1302; *see also Murphy*, 2023 WL 2090279 at *3 (recognizing that Supreme Court's decision in *Ruan* has no bearing on convictions for conspiring to distribute controlled substances).  Because the Supreme Court's holding in *Ruan* does not affect Petitioner's conspiracy conviction, Petitioner would be entitled to no relief on the merits of his *Ruan*-based claims.

Finally, Petitioner's counsel was not ineffective for failing to advise of the legal principles expounded in *Ruan* or to make *Ruan*-based arguments to the court. Counsel simply cannot be deemed ineffective for failing to anticipate the holding of what was then an undecided case. *See, e.g., Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *United States v. Finley*, 805 F. App'x 823, 826-27 (11th Cir. 2020). And, because a claim seeking relief from the conspiracy conviction based on the principles of *Ruan* would have been legally meritless for the reasons previously discussed, counsel cannot be deemed ineffective for failing to make the meritless argument. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

## IV.    Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that Petitioner's § 2255 motion (Doc. 2) be **DENIED** without an evidentiary hearing and that this case be **DISMISSED** with prejudice.

It is **ORDERED** that any objections to this Recommendation must be filed no later than **October 26, 2023**. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the district court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 12th day of October 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**